IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jason L.P., | ) |
|     Plaintiff, | ) ) ) ) Case No.: 21-cv-50342 |
| v. | ) ) Magistrate Judge Margaret J. Schneider |
| Carolyn W. Colvin, Commissioner of Social Security,[1] | ) ) ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

    Jason L.P. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability insurance benefits. The parties have filed cross motions for summary judgment [10, 17]. For the reasons set forth below, Plaintiff's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The final decision of the Commissioner denying benefits is affirmed.

**BACKGROUND**

**A. Procedural History**

    Plaintiff filed for supplemental security income and disability insurance benefits in August 2011 alleging an amended disability onset date of June 23, 2004. R. 73. This application has gone through a long process including six hearings, four opinions from an Administrative Law Judge ("ALJ"), and now, three appeals to this Court. The first ALJ decision was voluntarily remanded with directions from the Appeals Council to further evaluate Plaintiff's mental residual functional capacity. R. 649. After hearing from a vocational expert ("VE") and Dr. Kravitz, a psychological medical expert, the ALJ issued a partially favorable opinion on September 28, 2016, which found Plaintiff to be disabled as of November 9, 2015. R. 1800-13. The 2016 ALJ opinion did find a moderate limitation in Plaintiff's ability to maintain concentration, persistence, or pace, but this was largely based on a consultative examination completed in January 2015. R. 1810.

    After Plaintiff appealed, the 2016 ALJ decision was remanded by this Court on May 2, 2018, with directions to further analyze the opinions of Dr. Kravitz and Dr. Woodman, Plaintiff's treating physician. R. 1831-32. The Appeals Council then assigned the case to ALJ Lee Lewin who held a hearing on October 30, 2018, where she heard the testimony of Dr. Carney, another psychological expert, who did not have access to a transcript or recording of the 2016 hearings. R.

---

[1] Martin O'Malley resigned as Commissioner of the Social Security Administration on November 29, 2024, and Carolyn W. Colvin has taken over as Acting Commissioner. Carolyn W. Colvin is substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

1

1739, 1765-71. ALJ Lewin then issued her written opinion denying Plaintiff's claim for disability insurance benefit dating back to March 2010 but this 2018 ALJ opinion was remanded by the Appeals Council because it "did not adequately address the opinion evidence" of Dr. Kravitz. R. 1868.

The most recent hearing was held on February 25, 2020, where Dr. Carney again testified after reviewing Dr. Kravitz's testimony from the 2016 hearings. R. 1710-35. On March 12, 2020, the ALJ issued her written opinion denying Plaintiff's claim of disability existing at the time he was last insured on March 31, 2010. R. 1678-88. Plaintiff appealed the decision to the Appeals Council, which was denied. R. 1667-70. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [5]. Now before the Court are the parties' cross motions for summary judgment.

### B. The ALJ's Decision

In her ruling, ALJ Lewin applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of June 23, 2004, through his date last insured, March 31, 2010. R. 1679. At step two, the ALJ found Plaintiff had the following severe impairments: lumbar radiculitis, degenerative joint disease of the right knee with chondromalacia of the patella, and obesity. R. 1680. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 1682.

Before step four, the ALJ found Plaintiff had a residual functional capacity ("RFC") to perform sedentary work with the following limitations: no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs; no more than occasional stooping, kneeling, crouching, crawling, or balancing; no exposure to vibrations or extreme cold; and no exposure to hazards, including dangerous moving machinery and unprotected heights. R. 1683. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 1687. At step five, the ALJ found that, in reliance on the VE's testimony, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from June 23, 2004, through March 31, 2010, the date last insured. R. 1688.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial

evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff challenges the ALJ's decision on the grounds that: (1) the ALJ erred in her weighing of Dr. Carney's and Dr. Kravitz's opinions; (2) the ALJ failed to follow the special technique in evaluating Plaintiff's mental RFC as ordered by this Court and the Appeals Council; and (3) the ALJ failed to frame a proper hypothetical to the VE. As detailed below, the Court finds that none of these arguments warrant a remand and, therefore, the Commissioner's decision is affirmed.

### A. Weighing medical opinions

Plaintiff first argues that the ALJ erred when she gave Dr. Carney's opinion substantial weight and gave Dr. Kravitz's testimony only little weight. Pl.'s Br. at 9. Plaintiff argues that because of this error, the ALJ failed to fully consider the limitations caused by his mental impairment, specifically in the concentration, persistence, and pace category. *Id.* at 12.

In examining medical opinions, an ALJ must "explain how [the ALJ] considered supportability and consistency factors" and *may* explain their consideration of the remaining factors: relationship with claimant, specialization, and "other factors that tend to support or contradict the opinion." 20 C.F.R. § 416.920c(b)(2)-(c)(5). The required factors, supportability and consistency, are defined as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

3

> persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2). Here, the ALJ applied the appropriate factors and properly evaluated both Dr. Carney's and Dr. Kravitz's opinions. When evaluating Dr. Carney's opinion, the ALJ provided the following explanation:

> [Dr. Carney] noted that the medical evidence prior to the date-last-insured was not supportive of the B criteria assessed by Dr. Kravitz. Dr. Carney noted that the October 2011 assessments from Drs. Boyenga and Bilinsky that found insufficient evidence to rate the B criteria were more consistent with the presence of the claimant's depression prior to March 31, 2010. He also reviewed the Mental Residual Function Capacity Assessment from Dr. James Woodman dated April 17, 2013 and noted that these findings were not supportive prior to March 31, 2010. Dr. Carney testified that there was insufficient evidence to rate the B criteria and there was no support for any functional limitations for the relevant time period . . .There were no symptoms reflected in the primary care physician treatment notes, and there were no objective clinical findings suggesting functional restrictions, either. As such, Dr. Carney opined that there were no medically determinable impairments for severe psychiatric-based impairments on the record prior to the date-last-insured.

R. 1682 (citations omitted). The ALJ evaluated the supportability of Dr. Carney's opinion when she noted that the opinion was based on a lack of symptoms noted in treatment records as well as a lack of objective findings. She also evaluated the consistency of his opinion by pointing to the October 2011 assessments and noting that any inconsistency with Dr. Woodman's mental RFC assessment could be explained by the timeliness of the records relied on by Dr. Woodman, i.e. the fact that the ALJ's analysis had to be focused on the date last insured (March 31, 2010) and Dr. Woodman had relied on an assessment from April 2013. The ALJ thus correctly focused her analysis on the appropriate time period and evaluated the supportability and consistency of Dr. Carney's opinion.

> As to Dr. Kravitz's opinion, the ALJ provided this explanation:

> Little weight is given to this opinion, as Dr. Kravitz's opinion is not consistent with the medical evidence prior to March 31, 2010, which per Dr. Kravitz's own acknowledgment, provided no evidence of any treatment for depression aside from a prescription for Wellbutrin. Dr. Kravitz appeared to base his opinion partially on the January 2015 consultative examination, but this examination occurred nearly five years after the date-last-insured, and so would not be an accurate reflection of the claimant's ability to function for the relevant time period… [Dr. Carney] noted that the medical evidence prior to the date-last-insured was not supportive of the B criteria assessed by Dr. Kravitz.

4

R. 1681-82. Again, the ALJ evaluated the supportability of Dr. Kravitz's opinion by noting that the Wellbutrin prescription was the only objective support for a finding of depression which, as discussed later in the ALJ's opinion, does not alone show that Plaintiff had any functional limitations. She also noted that the consultative examination relied on by Dr. Kravitz was done 5 years after the date last insured before pointing to the inconsistency between his opinion and that of Dr. Carney. Accordingly, the ALJ properly considered these factors when she gave greater weight to Dr. Carney's opinion and little weight to Dr. Kravitz's.

Plaintiff also takes issue with Dr. Carney's testimony because he did not believe Plaintiff's depression to be a medically determinable impairment and because he did not sufficiently review Plaintiff's testimony prior to the hearing. These issues provide no basis for remand. First, the ALJ recognized that Dr. Carney was incorrect in finding that the depression was not a medically determinable impairment and instead found that it was medically determinable, but non-severe. R. 1680. However, Plaintiff uses this difference to argue Dr. Carney's unreliability. Pl.'s Br. at 11; Pl.'s Reply at 3. This argument is unconvincing. It merely shows the ALJ did her duty of weighing the evidence and reaching a conclusion contrary to that of Dr. Carney based on the totality of the record. *See* Y*oung v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do."). The Court cannot and will not re-weigh this evidence. *Id.*

As to Plaintiff's issue with Dr. Carney's lack of a thorough review of Plaintiff's prior testimony, which Plaintiff refers to as Dr. Carney "skimming" the transcript, this is simply not the role of a medical expert. It is the ALJ's job to evaluate a claimant's credibility, and the ALJ *cannot* delegate this job to a doctor. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) ("The ALJ cannot delegate to any doctor, and certainly not to a non-examining doctor, the task of evaluating the claimant's credibility."). Plaintiff seems to argue that Dr. Carney's failure to review Plaintiff's testimony did not allow him to employ the special technique as required when evaluating mental impairments but again, Plaintiff seems to be attempting to require the medical expert to perform the role of the ALJ. Pl.'s Br. at 11; *see also Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) ("The special technique requires that *the ALJ* evaluate the claimant's pertinent symptoms, signs, and laboratory findings.") (emphasis added and quotations omitted). To the extent that is Plaintiff's argument, it should be clear that only the ALJ, not Dr. Carney, was required to evaluate Plaintiff's symptoms. Ultimately, Plaintiff's argument does not contest that Dr. Carney's overarching testimony was that the evidence does not document any functional limitations prior to the date last insured.

The ALJ properly analyzed the medical opinions of both Dr. Carney and Dr. Kravitz and supported this analysis with substantial evidence. Accordingly, the Court finds no basis for a remand with respect to this analysis.

### B. Special technique for evaluating mental limitations

Plaintiff goes on to challenge the ALJ's failure to complete the "special technique" regarding the Paragraph B analysis as to the alleged mental impairments as ordered by this Court and the Appeals Council. Pl.'s Br. at 12. However, the ALJ did appropriately complete this analysis, she simply did not come to the conclusion Plaintiff would have preferred.

5

When completing evaluations of mental listings, the ALJ works within the Paragraph B framework, or the "special technique," which considers a claimant's impairments in four broad areas of mental function: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. 20 C.F.R. § 404.1520a(c)(3). In considering these Paragraph B criteria, the ALJ must evaluate the claimant's function in each of these categories on the following five-point scale in increasing order of intensity: none, mild, moderate, marked, and extreme. *Id.* at § 404.1520a(c)(4). To satisfy the Paragraph B criteria and meet a listing, Plaintiff must show an extreme limitation of one, or marked limitation of two, of the criteria. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(A)(2)(b). A claimant has a mild limitation if their functioning in the area is slightly limited on a sustained basis, a moderate limitation if their functioning is fair, a marked limitation if they are seriously limited, and an extreme limitation if they are not able to function in the area on a sustained basis. *Id.* at 12.00(F)(2).

Plaintiff accurately points out that the ALJ's conclusions are inconsistent with the previous ALJ decisions that found a moderate limitation in concentration, persistence, and pace. But Plaintiff fails to develop this argument, citing no legal authority holding that an ALJ is bound by the opinions of previous ALJs and even admitting that such findings are not res judicata. Pl.'s Reply at 2. He also fails to point to any medical evidence that show more restrictive limitations than provided by the ALJ here. Instead, Plaintiff seems to suggest that these previous remands required the ALJ to find a mental impairment, but this is a mischaracterization of those decisions. The September 2015 Appeals Council remand required a further evaluation of Plaintiff's mental impairments following the special technique and inclusion in the RFC of any limitations the ALJ found after this evaluation. R. 650. The May 2018 opinion from this Court required clarification of the RFC for a limitation the ALJ had found to be supported by the evidence. R. 1828. The September 2019 Appeals Council remand further explained that the ALJ was required to "adequately address the opinion evidence," use the special technique to evaluate his mental impairments, and account for any limitations in the RFC. R. 1868-69. These remands do not require the ALJ to find a certain limitation. The remands only require that the ALJ include restrictions in the RFC for limitations the ALJ does find. In fact, the remand from this Court even calls the moderate limitation in the concentration, persistence, or pace category into question as "there has been little explanation for why this conclusion was warranted" and "Dr. Kravitz and the ALJ may have simply given [P]laintiff the benefit of the doubt." R. 1831-32.

Here, the ALJ did exactly what these remands required of her. As discussed above, she evaluated the opinion evidence of both Dr. Kravitz and Dr. Carney. She also employed the special technique but did "not find anything in the objective record to suggest that claimant's medically determinable impairment of depression has posed…any limitations" in any of the four categories before his date last insured. R. 1682. As she found no limitations, there were no further restrictions to include in the RFC.

What Plaintiff's argument seems to truly boil down to is Plaintiff's contention that the ALJ should have included some mental limitations in the RFC. Plaintiff specifically argues that some restriction in his ability to concentrate, persist, or maintain pace should have been included, and would have been included had the ALJ not discredited his testimony.

6

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-8. Because of the unique position the ALJ has to observe the claimant, this Court will normally not disturb such a credibility determination. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). "As long as an ALJ gives specific reasons supported by the record, [this Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all the ALJ's reasons must be valid in a subjective symptom analysis "as long as *enough* of them are." *Halsell v. Astrue*, 357 Fed. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). Here, the ALJ's evaluation of Plaintiff's subjective symptoms was adequately support by evidence and explanation.

Plaintiff takes issue with the ALJ's decision to discredit his testimony alleging that he struggles with concentration and points to the administration of medication as support for this testimony. As Plaintiff has testified "on multiple occasions… about how his depression affected him," the Court will summarize this testimonial evidence here. In the hearing held in March 2008, Plaintiff simply reported that he was not receiving any formal counseling or therapy for his depression. R. 21. At the May 2013 hearing, he testified that he had difficulty concentrating, his "memory is atrocious," and he has a hard time focusing on magazine articles. R. 66-67. When asked if his depression interfered with his daily activities at the March 2016 hearing, Plaintiff did not mention any difficulties with concentration. R. 554. At the July 2016 hearing, Plaintiff stated that he has memory problems that cause him to sometimes take medication he has already taken. R. 591. Again, Plaintiff testified in October 2018 that he had problems focusing, explaining that he "couldn't even read… a magazine article" and "it'd take [him] sometimes two or three tries to finish a magazine article." R. 1757; 1759.

While Plaintiff's own reports of his symptoms are one of the factors used in this assessment, the ALJ properly evaluated *all* the factors and found Plaintiff's testimony relating to concentration issues unconvincing. In discussing Plaintiff's depression, the ALJ explained that Dr. Woodman, Plaintiff's treating physician, noted no abnormal mental status findings during any of Plaintiff's visits from July 2009 through March 2012. R. 1680. She noted that there was no mention of any mental limitations anywhere in the record until Dr. Woodman completed a medical opinion in April 2013, more than three years after Plaintiff's date last insured. *Id.* The ALJ recognized that Plaintiff was receiving medication for his depression but again noted that no evidence supported finding any functional limitations as a result. R. 1681. She noted that his activities of daily living, watching television and playing videogames, were also not indicative of any mental limitations. R. 1684.

Again, if an ALJ provides sufficient reasons for her determination which are not patently wrong, the ALJ's assessment of Plaintiff's subjective symptoms will stand. Here, the ALJ sufficiently evaluated Plaintiff's subjective symptoms, supported this evaluation with substantial evidence, and included limitations in the RFC that were supported by the record. Accordingly, a remand is not warranted on this basis.

### C. Vocational expert hypothetical

As a preliminary matter, this Court notes that this argument was partially waived by Plaintiff. Although a failure to return to an issue in a reply brief does not necessarily waive the issue, any response to "opposing party's counter arguments or new arguments raised in the response brief" are waived when not included in the reply. *Kyles v. Beaugard*, 2023 WL 5277882, at *12 (N.D. Ill. 2023) (citing *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023). Here, Plaintiff challenges the ALJ's failure to include any RFC limitations to address his purported issue of concentration, persistence, and pace in his opening brief which the Commissioner responded to by pointing to the lack of medical evidence to support such a limitation, thus requiring no such limitation be presented to the VE. In his reply, Plaintiff does not bring up this issue again and thus waives any response to the Commissioner's argument. Despite this, the Court will address the merits of this argument.

A hypothetical posed to a VE is flawed if it "does not include all of the limitations *supported by medical evidence* in the record." *Young*, 362 at 1005 (emphasis added); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("[T]he hypothetical posed to the VE… must incorporate all of the claimant's limitations supported by the medical record."). This does include mental deficiencies such as limitations in concentration, persistence, or pace but only when such a limitation is documented. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (The hypothetical posed to the VE "must account for *documented* limitations of concentration, persistence, or pace.") (emphasis added and quotations omitted). When an ALJ finds no further limitations than those included in the hypothetical posed to the VE, she does not err. *Page v. Barnhart*, 127 Fed. App'x 885, 887 (7th Cir. 2005) (finding that there was no error when the ALJ did not rely on the VE's testimony in response to a hypothetical posing a more extreme set of limitation than the ALJ found the claimant to possess).

While Plaintiff is correct in stating that the hypothetical posed to the VE must include any limitations supported by the medical record – including any deficiencies in concentration, persistence, or pace – no such limitations were found here. As discussed above, this Court finds no error with the ALJ's determination that no mental limitations existed at the date last insured and thus the ALJ did not need to pose any such limitations to the VE. Therefore, no remand is required to pose a more restrictive hypothetical to a VE.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed. Final judgment will be entered accordingly.

Date: December 13, 2024                     Enter: *Margaret J. Schneider*
                                                   United States Magistrate Judge

8